IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 4, 2015

## MAURICE JOHNSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 1002315    Chris Craft, Judge**

_____

**No. W2014-01982-CCA-R3-PC  -  Filed August 21, 2015**

_____

Petitioner, Maurice Johnson, was convicted by a jury of three counts of rape. The trial court merged Counts 2 and 3 into Count 1 and sentenced petitioner to serve twenty years at 100% release eligibility. Petitioner timely filed a petition for post-conviction relief, which was denied by the post-conviction court after an evidentiary hearing. He now appeals the denial of relief, alleging that the trial court erred in instructing the jury as to the culpable mental state for rape and that trial counsel rendered ineffective assistance by failing to object to the same. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Jason Matthews, Memphis, Tennessee, for the Appellant, Maurice Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Lora Fowler, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I.  Facts

### A.  Trial

On direct appeal from his conviction and sentence, this court summarized the facts developed at petitioner's trial as follows:

The charges against [petitioner], who was in his fifties, arose from his acts against the ninety-nine year old victim. [Petitioner] considered the victim to be like a grandmother to him, having known her since he was a child when his mother married one of the victim's sons.

[J.B.],[1] the victim's son, testified that at the time of the crime in October, 2009, his mother was supposed to be living alone in Memphis; however, for several years [petitioner] had stayed with her occasionally, despite being told by the family that they did not want him there. According to [J.B.], his mother was unable to cook and clean because of her age and health, so he brought the victim all her meals and had the house cleaned. [J.B.] was appointed as power of attorney, handled all the victim's business, and checked on her two to three times daily. He indicated that the victim was frail and used a walker to get around.

On October 4, 2009, [J.B.] went to the victim's home around 10 a.m. to give her medication before going to church. After church, he returned to the victim's home and was let in by [petitioner] because the victim was still in bed. However, the victim told [J.B.] that she wanted to talk to both him and [petitioner]. The victim then stated that [petitioner] had been forcing her to have sex and had told her that he would kill her if she told anyone. Based upon her disclosure, [J.B.] immediately called the police. Prior to leaving the home, [petitioner] told [J.B.] that the victim had gotten hurt when he was "wrestling" with her. The victim was subsequently taken to the Rape Crisis Center where an examination was conducted.

A forensic nurse performed a physical examination of the victim and collected a rape kit. During the pelvic examination, the nurse was unable to use the speculum to collect the evidence from the victim because she suffered from introitus stenosis, which is a narrowing of the vaginal opening which occurs with age. The nurse did not observe any bruising, tearing, or lacerations in the genital area, which, in her opinion, made it impossible to confirm or negate the possibility of sexual assault. However, as the nurse began to spread open the vaginal lips in order to collect the samples, the victim complained that she was uncomfortable and that the nurse was "poking around" in her vagina "like [petitioner] with his peter."

---

[1] Consistent with this court's policy of protecting the privacy of victims of sexual abuse, we will refer to the victim's immediate family members by their initials, also.

Based on her experience, the presence of sperm inside the vaginal vault and the victim's complaint of vaginal pain indicated penile penetration had occurred.

Officer Charles Lowrie of the Memphis Police Department was dispatched to the home in response to [J.B.]'s call. When he arrived, he noted that the victim appeared to be coherent and communicated well with him. The victim told him that [petitioner] had touched her underneath her clothes and had "wrestled" with her. When asked if [petitioner] had had sex with her, the victim responded that "he had been going up inside of her." Lieutenant Wilton Cleveland and Sergeant Stephen Cody Wilkerson also spoke with the victim about the incident. An investigation was conducted at the victim's home, and an alternate light source device revealed the presence of semen on the victim's bed sheets and a pair of her underwear.

Based upon the comments made by the victim, [petitioner] was developed as a suspect. After conducting a search for him, [petitioner] was eventually found in a barber shop. When approached by the officer, [petitioner] replied, "I was wondering when y'all were going to come looking for me." After being advised of his rights, [petitioner] agreed to talk to Sergeant Wilkerson. He acknowledged that he had been living with the victim for over a year and that they slept in separate bedrooms. With regard to the victim's memory problems, [petitioner] indicated that the victim had forgotten who he was, but had never mistaken him for someone else. He adamantly denied having any sexual contact whatsoever with the victim. He did acknowledge that he had "wrestled" with her on one occasion when she was trying to wrap a coat hanger around a door. When asked about the rape allegations, [petitioner] simply stared at the floor and eventually stopped responding to the questions asked. DNA samples were collected from [petitioner].

Later testing by the Tennessee Bureau of Investigation revealed the presence of spermatozoa on the vaginal swabs, and, because of the large number of sperm found, it was estimated that the sperm was probably deposited twenty-four to forty-eight hours prior to collection. The DNA profile found on the vaginal swabs matched [petitioner]'s DNA profile.

Based upon these acts, [petitioner] was indicted for three counts of rape. At the subsequent jury trial, [petitioner] testified and again denied that he had raped the victim. He acknowledged that he had resided with the victim, indicating that it was he, not the victim's son, who cooked, cleaned, ran errands, and served as security for the victim. However, he testified

that, on the night of the alleged rape, he was not in the home. He indicated that the victim had given him money to stay at a boarding house that evening because of problems with her son. He continued, however, to state that on the evening prior, he had been asleep in his bed and woke up to find that the victim, who was naked, had gotten into bed with him. According to [petitioner], the victim asked him "can you give me a little bit?" He said that he initially refused her request, but he changed his mind because she had let him move in with her and he felt obligated to her. However, he denied that he had penetrated the victim, claiming instead that the victim had masturbated him. He stated that the victim had tried to insert his penis, but was unable to do so. He maintained that he had ejaculated on the outside of her vagina.

Because of her advanced Alzheimer's disease, the victim was unable to testify at the trial. The court declared her unavailable, and evidence was introduced through other witnesses accordingly.

After hearing the evidence presented[,] the jury convicted [petitioner] as charged in all counts. The trial court subsequently merged counts two and three into count one and sentenced [petitioner], as a multiple offender, to twenty years at 100%.

*State v. Maurice Johnson,* No. W2011-01079-CCA-R3-CD, slip. op. at 1-4 (Tenn. Crim. App. May 29, 2012). Petitioner did not seek discretionary review by the Tennessee Supreme Court.

## B. Post-Conviction

Petitioner filed a timely petition for post-conviction relief and, through counsel, filed two additional amended petitions. The trial court heard testimony over the course of three evidentiary hearings.

At the May 6, 2014 evidentiary hearing, petitioner called trial counsel as his first witness. Trial counsel testified that his representation of petitioner began in November 2009. He recalled that he waived petitioner's preliminary hearing and that he met with petitioner to prepare for the deposition of the victim, which took place at the nursing home where she resided. He said the victim did not remember petitioner but stated that she would not have had sexual intercourse with him because "she wasn't raised that way." He testified that petitioner's defense was that the victim wanted to have intercourse with him and that he felt obligated to do so because she had helped him financially. However, petitioner decided he could not have intercourse with the victim, so he masturbated on her instead.

-4-

Trial counsel testified that he was aware that the *mens rea* requirement for rape as codified in the Tennessee Code Annotated was intentionally or knowingly and that he did not recall whether recklessly was included in the definition. He acknowledged that at the time of trial, he was not aware of the *State v. Weltha Womack* case to which post-conviction counsel referred and that he did not know at the time to object to the trial court's jury instruction that included recklessly in the *mens rea* definition.[2] Upon further questioning, trial counsel stated that he did not think the jury believed petitioner's version of the events, i.e., that the rape was "reckless."

Petitioner then testified on his own behalf and said that he did not think that trial counsel's representation of him was "effective enough." Specifically, petitioner said that trial counsel failed to subpoena petitioner's brother as a witness, failed to verify DNA testing, and failed to hire an investigator. Petitioner claimed that trial counsel "tricked" him into waiving his preliminary hearing. He said that trial counsel advised against his testifying but that he wanted "to tell the truth" about what had happened.

At the June 25, 2014 hearing, petitioner presented his brother, James Culp, as a witness, who testified that he was the victim's grandson. He stated that he attempted to discuss petitioner's case with trial counsel and that trial counsel would not provide him with any information. He said that at trial, counsel became "sarcastic" with him because he could not understand the results of the DNA test and that they "began to exchange words" outside the courtroom. Because of this, Mr. Culp did not believe that trial counsel provided petitioner adequate representation.

On July 9, 2014, petitioner was recalled and testified that he was unaware that the victim had given a statement to a detective prior to trial. The State recalled trial counsel who testified that he provided petitioner with a full copy of the discovery he received. Trial counsel also listed the factors he considered when waiving the preliminary hearing. First, the victim's home had been burglarized, and she had been severely injured and hospitalized for some time, thus necessitating a delay in the hearing. Second, the State agreed to provide him with discovery prior to presenting the case to the grand jury. Third, trial counsel said that as a matter of strategy, he preferred not to have the victim's sworn testimony recorded so that it could be played back at a later time if necessary. Trial counsel said that petitioner understood the reasons why he waived the preliminary hearing.

---

[2] At this juncture, a colloquy between post-conviction counsel and the court occurred during which the court clarified that "recklessly" was included in the statute and the pattern jury instructions and that the *Weltha Womack* decision was an unpublished opinion from this court.

The post-conviction court denied relief by written order dated September 2, 2014. This appeal follows.

## II. Analysis

In this appeal, petitioner raises two issues: (1) whether the trial court erred in including "recklessly" in the *mens rea* requirement for rape and (2) whether trial counsel provided ineffective assistance by failing to object to the trial court's jury instructions in this regard. Specifically, he argues that *State v. Weltha Womack*, No. E2003-02332-CCA-R3-CD, 2005 WL 17428 (Tenn. Crim. App. Jan. 4, 2005), *overruled by State v. Clark*, 452 S.W.3d 268, 296 (Tenn. 2014), which stands for the proposition that "reckless" should not generally be charged to the jury in aggravated rape cases, operates to his advantage.

### A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee

Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id*. at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

B. Whether the Trial Court Erred in Including "Recklessly" in the *Mens Rea*

-7-

Requirement for Rape in the Jury Instructions

The Post-Conviction Procedure Act states, "Relief under this part shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. However, a ground for relief may be waived if:

(g)     the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:

(1)     The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or

(2)     The failure to present the ground was the result of state action in violation of the federal or state constitution.

*Id.* § 40-30-106. Our supreme court has recognized waiver in the context of failure to give particular jury instructions. *See Wiley v. State*, 183 S.W.3d 317, 327 (Tenn. 2006) (recognizing that appellant was entitled to a jury instruction on second degree murder and the trial court was obligated to give it regardless of whether it was requested but that the trial court's error could have been raised on direct appeal but was not; thus, the issue was waived for post-conviction consideration). Likewise, because petitioner's issue could have been raised at trial, at a motion for new trial, or on direct appeal, we conclude that it is waived for post-conviction review.

C. Whether Trial Counsel Provided Ineffective Assistance by Failing to Object to the Trial Court's Jury Instructions in this Regard

However, this issue may still be considered in the context of whether trial counsel rendered ineffective assistance by failing to object to the trial court's jury instruction. Both the United States and the Tennessee Constitutions guarantee a right to trial by jury. U.S. Const. amend. VI; Tenn. Const. art. I, 6; *Bryant v. State*, --- S.W.3d---, 2015 WL 1137755, at *6 (Tenn. Mar. 13, 2015). This includes the "right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *Bryant*, 2015 WL 1137755, at *6 (quoting *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011)); *see* Tenn. R. Crim. P. 30. "As part of their instructions in criminal cases, trial courts must describe and define each element of the offense or offenses charged." *Clark*, 452 S.W.3d at 295 (citing *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005); *State v. Cravens*, 764 S.W.2d 754, 756 (Tenn. 1989)).

-8-

Although the jury instruction was not included in the record, the post-conviction court cited it in the order denying relief. According to the order, the trial court instructed the jury as follows:

Count 1: For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant had unlawful sexual penetration of the alleged victim;

and

(2) that force or coercion was used to accomplish the act;

and

(3) that the defendant acted either intentionally, knowingly, or recklessly.

Count 2: For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant had unlawful sexual penetration of the alleged victim;

and

(2) that the sexual penetration was accomplished without the consent of the alleged victim and the defendant knew, or had reason to know, at the time of the penetration that the alleged victim did not consent;

and

(3) that the defendant acted either intentionally, knowingly, or recklessly.

Count 3: For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant had unlawful sexual penetration of the alleged victim;

and

(2) that the defendant knew, or had reason to know, that the alleged victim was mentally defective, mentally incapacitated or physically helpless;

and

(3) that the defendant acted either intentionally, knowingly, or recklessly.

The *Clark* opinion made clear that "[n]ot every statutory crime contains a specific required mental state." 452 S.W.3d at 295; *see State v. Page*, 81 S.W.3d 781, 786 (Tenn. Crim. App. 2002) (noting that culpable mental states are generally defined by criminal statutes). To that end, the Tennessee Code contains a generic *mens rea* statute: generally, whenever a statutory offense does not specify a culpable mental state, then "intent, knowledge, or recklessness suffices to establish the culpable mental state." *Id.* (quoting Tenn. Code Ann. § 39-11-301(c)).

The *Clark* opinion also noted a split among panels of this court regarding whether "reckless" should be charged to the jury in cases involving rape of a child*, see, e.g., State v. Johnny Lynn,* No. M2008-00532-CCA-R3-CD, 2009 WL 1812419, at \*5 (Tenn. Crim. App. June 25, 2009) (acknowledging a split of authority regarding the mens rea for rape of a child), *perm. app. denied* (Tenn. June 19, 2012); *State v. Charles L. Williams,* No. M2005-00836-CCA-R3-CD, 2006 WL 3431920 (Tenn. Crim. App. Nov. 29, 2006) (split opinion concerning rape of a child). *Clark*, 452 S.W.3d at 295. However, opinions of this court seem to be in unison on instructing the jury on intentional, knowing, and reckless for rape. *See State v. Albert C. Scott*, No. M2012-01137-CCA-R3-CD, 2013 WL 3329093, at \*8 (Tenn. Crim. App. June 28, 2013) (citing with approval Tennessee Code Annotated section 39-13-503's definition of rape as "the unlawful sexual penetration of the victim, committed intentionally, knowingly, or recklessly, and accompanied by: (1) force or coercion; or (2) without the consent of the victim; or (3) the defendant's knowledge or reason to know that the victim is mentally defective, mentally incapacitated or physically helpless"); *see also State v. Jones*, 889 S.W.2d 225, 230 (Tenn. 1994) (holding that the statutory language requires that in rape cases, "intentional," "knowing,"

-10-

and "reckless" all should have been charged to the jury).  Thus, because the trial court gave an instruction that was consistent with the law, trial counsel did not error by failing to object to it.

We further note that the trial court instructed the jury in accordance with the Tennessee Pattern Jury Instructions.  *See* T.P.I. 10.02 (pattern jury instruction for rape). "While the pattern jury instructions are frequently used as a source for jury instructions in criminal cases, *State v. Davis*, 266 S.W.3d 896, 901 n.2 (Tenn. 2008), they are not entitled to greater deference than the other instructions given by the trial court, *see State v. James*, 315 S.W.3d 440, 446 (Tenn. 2010) (quoting *State v. Rimmer*, 250 S.W.3d 12, 30 (Tenn. 2008))."  *Clark*, 452 S.W.3d at 295.  Nonetheless, case law consistently grants deference to trial counsel when the failure to object to a jury instruction is grounded upon the trial court's instructing the jury in accordance with the pattern jury instructions.  *See Torrey L. Frazier v. State*, No. E2012-01751-CCA-R3-PC, 2013 WL 5964011, at *11 (Tenn. Crim. App. Nov. 6, 2013), *perm. app. denied* (Tenn. May 14, 2014) (concluding that because the trial court gave the second degree murder instruction reflected in the Pattern Jury Instructions, trial counsel were not deficient for failing to object); *Christopher A. Davis v. State*, No. M2010-01045-CCA-R3-PD, 2012 WL 3679571, at *40 (Tenn. Crim. App. Aug. 24, 2012) (concluding that trial counsel was not ineffective for failing to object to jury instructions on felony murder and criminal responsibility that "mirrored the Tennessee Pattern Jury Instructions").  We cannot conclude that trial counsel performed ineffectively in failing to object to the trial court's instruction. Petitioner is not entitled to relief.

## CONCLUSION

Based on our review of the record, the briefs of the parties, and the applicable legal authorities, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE